**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SIMONA ROBINSON<br><br>                         v.<br><br>GMAC MORTGAGE;<br>PHELAN HALLINAN & SCHMIEG, LLC, | Civil Action No. 5:12-cv-151 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.      Introduction

Defendants, a default mortgage servicer, GMAC, and their collection law firm, PHS,

have engaged in false and abusive post-bankruptcy debt collection against Plaintiff who had

discharged her pre-petition arrears to GMAC and vainly attempted to reinstate her loan post-

bankruptcy by paying all amounts due GMAC.  Plaintiff amended her original complaint to

sharpen the facts underlying her abuse of process claims, most particularly her bankruptcy

counsel's pre-suit correspondence lucidly explaining why defendants' collection demands were

utterly incorrect. GMAC would only deal with plaintiff post-bankruptcy through its foreclosure

counsel, PHS, thereby using the weight of a potential sheriff sale to intimidate plaintiff into

paying months of payments GMAC had already received.

Plaintiff here sues defendants under the FDCPA and RESPA for falsely alleging amounts

due and failure to account as well as for abuse of process for failing to accept plaintiff's

reinstatement payments and discontinue the foreclosure litigation.

## II.      Legal Standard

A.  Motion to Dismiss:  *Fowler* re *Twombly* and *Iqbal*

Reversing the District Court's 12(b)(6) dismissal upon claims of insufficient specificity,

the Third Circuit held the United State Supreme Court in Twombly and Iqbal (in accord with

Phillips) merely requires that the Complaint "set out 'sufficient factual matter' to show that the claim is sufficiently plausible… [allowing] the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPML Shadyside - - F. 3d - -, 2009 WL 2501662 (C.A.3 (Pa) 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1955 (2009)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 230 (C.A.3 2008).

Fowler reiterated the appropriate Motion to Dismiss standard, as elucidated in Phillips, remaining: "courts [must] accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff *may* be entitled to relief." Fowler, supra (quoting Phillips, at 233) (emphasis added). "Although Fowler's Complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims." Fowler (citing Twombly, at 564, n.8).

"Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation *that discovery will reveal evidence of the necessary element*.'" Fowler, supra; (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 231 2671 (W.D. Pa. 2008) Phillips, at 234. Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting Twombly, at 1969). In fact, a Plaintiff need not plead any causes of action (merely facts with request for relief). *See* 2 James Wm. Moore et al., *Moore's Federal Practice* P 8.04[3].

"Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." Fowler, supra "…[S]tandards of pleadings are not the same as standards of proof." Id. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." Id. (quoting Twombly, at 556).

B. Amended Pleading

A Plaintiff should be provided an opportunity to file an Amended Complaint if it appears that the deficiencies can be corrected. Twombly, supra.; *See,* 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, In re Spree.com Corp., 2001 WL 1518242 (Bankr. E.D. Pa. 2001). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

The Court should freely give leave to amend a Complaint "when justice so requires." FRCP 15(a)(2); Fowler, supra. ("we note that the District Court inexplicably foreclosed Fowler from an opportunity to amend her Complaint so as to provide further specifics…" Though the deadline for amended pleadings had not yet expired, the District Court dismissed Fowler's Complaint with prejudice in error) (emphasis added). The Court should grant Plaintiffs leave to amend their Complaint unless futile or prejudicial, *even if not requested*. Adams v Gould, Inc., 739 F.2d 858, 868-870 (C.A.3 1984) (reversing district court denial of motion to amend a complaint to assert a new legal theory); Arthur V. Maersk, Inc., 434 F.3d 196, 204-2017 (C.A.3 2006) (reversing district court denial of motion to amend to add a new party approximately one year after initiation); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (C.A.3 1993) (finding no

prejudice three years after action and two years after complaint was amended for second time). "Prejudice" is often used as a misnomer – *prejudice* is not defined by the requirement of ongoing litigation or defense but instead results from an inability to defend. Id.

### C. Jurisdiction

Supplemental jurisdiction "<u>must</u>" be declined in lieu of adjudicating pendent State law claims unless consideration is provided in affirmative justification otherwise. <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780 (C.A.3 1995) (emphasis added); *see,* <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *see also,* <u>Annulli v. Panikkar</u>, 200 F.3d 189, 202 (3d Cir. 1999).

In adjudicating a peculiar State law question, that analysis should be left to the State Court. <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943); <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25 (1959).

### D. Conclusion (Standard)

When applying the correct standard, Plaintiff's First Amended Complaint is sufficiently specific and Defendant's Motion should be denied. In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow. Otherwise, state law claims should be dismissed without prejudice to the state court.

## III. Argument

### A. Plaintiff Pleads GMAC as Default Servicer Whose Post-Bankruptcy Collection Actions Violated the FDCPA

1. GMAC is Pleaded as a Debt Collector

GMAC first argues that Plaintiff does not plead the mortgage debt to be in default when GMAC acquired it and therefore GMAC falls within the acknowledged mortgage servicer exception to the FDCPA, 15 U.S.C. §1692a(6)(F)(iii).  This is clearly wrong.  Plaintiff alleges the prior servicer, Fairbanks, sued plaintiff in foreclosure, plaintiff failed to pay a forbearance agreement with Fairbanks to reinstate the loan, and her defaulted mortgage debt was then pursued in foreclosure by GMAC[1].  Within this six (6) month span when GMAC acquired servicing, plaintiff's mortgage debt remained in default.

2.  The FDCPA Statute of Limitations

GMAC next argues that plaintiff's claim is based on GMAC wrongly collecting on the proof of claim in bankruptcy in a period in excess of one (1) year prior to filing.  This is a drastic mischaracterization of the actual pleading.  Plaintiff's FAC pleads four (4) separate wrongful acts of collection by defendants based on defective accounting of the loan both *in* and *outside* the bankruptcy: June, 2006 false motion for relief[2], February, 2010 certification of default[3], May, 2011 fabricated post-petition default[4], and post-bankruptcy wrongful collections in September and November, 2011[5].  Only the first three (3) are pleaded in the FAC, the fourth having been omitted only as an oversight in pleading[6].  In each of these four collection instances, a different amount was sought to be collected by defendants. In the first two instances, the collection disputes were resolved in plaintiff's favor and in the last two were not.

The first two (2) collection acts are indeed beyond the one (1) year scope of the FDCPA though otherwise relevant to defendants' defense of the FDCPA claims.  However,

---

[1] FAC ¶¶6-10
[2] FAC ¶¶ 13-18
[3] FAC ¶¶25-27, Plaintiff mistakenly refers to same as a "stipulation of default", also in ¶30 and thereafter, incorrectly implying agreement  by the parties of plaintiff's default rather than unilateral allegation of plaintiff's post-petition default.
[4] FAX ¶33
[5] FAC ¶¶35-46, *subtitled  therein*, "False and Deceptive Post Bankruptcy Collection Efforts"
[6] FAC ¶51

Count I specifically pleads the three (3) specified collections as a partial listing of wrongful collection conduct by defendants alleged in the fact portion of the FAC. GMAC's conduct relevant to FDCPA violations is the third and fourth collections in 2011 seeking different wrongful amounts than the preceding collection efforts.  The remedy for more specifically pleading those facts within Count I is, as discussed above, amendment rather than dismissal to the extent it is deemed necessary at all by the Court. For purposes of this action, plaintiff only pleads defendants' two (2) collection acts in 2011 as violating the FDCPA and concedes the prior two (2) collection acts fall outside the FDCPA limitations period.

       3.   There is no Pre-emption of the FDCPA by the Bankruptcy Code Herein

       Recent case holdings in different circuits have held, on facts distinguishable from those of the instant case, that a consumer plaintiff could not simultaneously pursue an action under the Bankruptcy Code and the FDCPA on the basis broadly that Congress did not intend "to allow debtors to bypass the [Bankrutpcy] Code's remedial scheme when it enacted the FDCPA." These cases are commonly described as falling into one of two categories, those holdings that follow Walls v. Wells Fargo[7] and those that decline to do so. However, a closer look at Walls and following cases reveal those holdings narrowly address facts involving a proof of claim that is the target of an FDCPA claim.  Fortunately, there is no need for the Court under the facts of the instant case to choose between competing lines of case holdings from different circuits as to whether the bankruptcy code pre-empts the FDCPA because the third and fourth alleged instances of defendants' illegal collection conduct herein do not involve contesting a creditor proof of claim.

       In Walls, the Ninth Circuit found Wells Fargo did not violate the FDCPA when it attempted to collect on a debt discharged in bankruptcy.  Walls, *supra*, at 505.  The Ninth Circuit

---

[7] Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir.  2002).

stated that the debtor's FDCPA claim was based on an alleged violation of § 524 of the Code

[violation of the discharge injunction], and that the Code provides its own remedy for such a

violation in the form of civil contempt pursuant to § 105. Id. At 510.  While the holding in Walls

was specifically rejected by other Courts[8], careful analysis of the pro-Walls holdings do not

reveal a simplistic approach to the pre-emption issue argued by defendants that bars plaintiff's

current FDCPA claims even if Walls and related case holdings were uncontested governing law.

The pro-Walls holdings, including the Simmons case cited by defendants, involved the

common underlying scenario of an FDCPA claim arising from dispute of a filed proof of claim

in a bankruptcy case. This scenario is also common to the Pariseau[9] and Chaussee[10] cases relied

upon in the pending non-precedential Third Circuit case of Rhodes v. Phelan, the latter case

partially alleging defendant PHS illegally increased consumers' debts by filing proofs of claim in

bankruptcy courts that included artificially inflated mortgage foreclosure fees.  However, the

Rhodes case quotes the holdings of Pariseau and Chaussee so broadly and without factual

context as to mischaracterize the actual narrower scope of their holdings on the pre-emption

issue.  The Court in Chaussee noted:

> Walls notes that wherever possible, competing federal statutes should be read jointly.
> Walls, 276 F.3d at 510 (citing Ruckelshaus v. Monsanto Co.,467 U.S. 986, 104 S.Ct.
> 2862, 81 L.Ed.2d 815 (1984)).  Id. at 237.

> Unlike in Randolph, where the debtor's claim against the creditor was based upon the
> creditor's actions taken after conclusion of the bankruptcy case, the purported FDCPA
> violation targets [creditor] B-Real's **act of filing a proof of claim in the pending
> bankruptcy case**. Application of the FDCPA to this conduct would certainly conflict
> with the Code. Id. at 238. (emphasis added)

---

[8] Randolph v. IMBS, Inc., 368 F.3d 726 (7th Cir. 2004); Burkhalter v. Lindquist & Trudeau, Inc., No. 4:04-CV-1803-DJS, 2005 WL 1983809 (E.D. Mo. Aug.16, 2005); Drnavich v. Cavalry Portfolio Service, LLC, No. Civ. 05-1022, 2005 WL 2406030 (Sept. 29, 2005).
[9] 395 B.R. 492, 495 (Bankr. M.D. Fla. 2008)
[10] 399 B.R. 225, 239 (B.A.P. 9th Cir. 2008)

The Court in Pariseau similarly circumscribed its holding stating that "although other courts have applied the FDCPA in bankruptcy cases, they have done so only in the very narrow context of situations involving the automatic stay." Pariseau, *supra*, at 395.   Here, plaintiff's collection disputes with defendants solely involved relief from the automatic stay issues based on post-petition mortgage payments, not pre-petition mortgage arrears addressed by GMAC's proof of claim.

In contrast to the lack of analysis or weighing of conflicting case holdings by the Third Circuit in Rhodes, courts of this District have carefully weighed the pre-emption issue in facts similar to the instant case where the Court found no pre-emption of the FDCPA by the Code. In Dougherty v. Wells Fargo Home Loans, Inc., 425 F.Supp.2d 599 (E.D. Pa. 2006), the Court, following the reasoning of the ruling in Molloy v. Primus Auto. Fin. Servs.,247 B.R. 804 (C.D.Cal. 2000), held no FDCPA claim preclusion on facts involving a lender Creditor presenting to Debtor post-discharge a mortgage loan payoff statement that included mortgage-related attorney's fees and costs excluded from the proof of claim and post-petition bankruptcy fees.   The Court held that allowing an FDCPA claim to proceed on these facts would not potentially undermine the Bankruptcy Code where Defendant's alleged collection misconduct was post-confirmation and sufficiently removed from Plaintiff's bankruptcy proceedings so that there is no risk of undermining the Code's provisions for the administration of the debtor's estate. Dougherty at 606.

In the instant case, both the third and fourth instances of collection conduct concern post-petition payments and related relief from automatic stay issues, not pre-petition payments towards a creditor proof of claim filed by GMAC of the kind that were contested in the pro-

<u>Walls</u> cases discussed.  There is no disagreement among this line of cases that the FDCPA is not pre-empted by the Bankruptcy Code in this fact scenario.

    B.  <u>Plaintiff pleads a QWR was Sent and that Service on GMAC's Lawyers Was Proper</u>

First, plaintiff pleads a Qualified Written Request ("QWR") was sent by plaintiff's then agent, her bankruptcy counsel, in the form of an email explaining in detail the accounting dispute, FAC ¶40. This accords with the definition of a QWR:

> For purposes of this subsection, a qualified written request shall be a written correspondence, … that -
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
> 12 U.S.C. § 2605(e)(1)(B)(ii).

Insofar as GMAC refused to accept payments directly from plaintiff through most of plaintiff's bankruptcy and instead had delegated to PHS such function, PHS was functionally GMAC's agent for purposes of its servicing functions. Accordingly, service of the QWR upon GMAC's lawyers, PHS, was sufficient notice of the accounting dispute to GMAC under RESPA.  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . ., and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan". 12 U.S.C. § 2605(i)(3). Again, GMAC had abdicated any receipt of payments from plaintiff in favor of PHS.  Neither PHS nor PHS ever properly responded to plaintiff's QWR.

C. <u>Plaintiff Sufficiently Pleads Abuse of Process and Does Not Allege a Wrongful Use Count</u>

Defendants dispute that any of the three (3) elements of abuse of process are met by plaintiff's pleading.  Defendants are wrong where they mount any argument at all to these elements being pleaded.  First, while defendants concede they filed a foreclosure action against plaintiff, defendants do not articulate any argument as to why a foreclosure does not constitute legal process.  Second, defendants dispute that the foreclosure action filed in 2005 against plaintiff was used for an improper purpose because plaintiff owed the arrears alleged therein at the time of filing and because defendants did not perform any docketed act in the foreclosure after 2005. The fact that the foreclosure action was properly filed *initially* is utterly irrelevant to whether that legal process, once filed, was then abused by defendants after plaintiff attempted to fully reinstate the loan and cure the default underlying the foreclosure as plaintiffs allege[11]. Defendants confuse the legal theory of abuse of process with the legal theory of wrongful use, the latter involving *initiating* a civil proceeding for an improper purpose. Plaintiff makes no wrongful use claim in either her original complaint or the FAC. Otherwise, plaintiff disputes as irrelevant whether defendants took affirmative docketed acts in the foreclosure action whether FAC clearly alleges that defendants' collection letters used the filed foreclosure action as a weapon to threaten plaintiff into compliance with its wrongful collection demands. That foreclosure action's use as an improper threat of wrongful foreclosure entitles plaintiff to punitive damages regardless of the foreclosure action's dismissal by defendants after filing of this action challenged their unlawful behavior.

D. <u>Plaintiff is Entitled to Equitable Relief</u>

---

[11] FAC ¶40, 60-63. Also plaintiff's FAC Ex. A reflects. but is not quoted in the FAC allegation, ¶40,  that plaintiff's bankruptcy counsel was also holding the September and October, 2011mortgage payments.

Defendants, after depriving plaintiff of an accurate accounting of her mortgage loan, now ask the Court to believe and plaintiff to accept a payment history without recourse to challenge through discovery.  Plaintiff's FAC must be accepted as true for purposes of 12(b)(6) and Defendants' argument fails at this early juncture of the proceedings.

E.  Plaintiff's Post-Petition Bankruptcy dispute with GMAC is not *Res Judicata*

Defendants argue that plaintiff's filing of a chapter 13 plan that addresses pre-petition mortgage arrears is determinative of post-petition payment disputes that could have been adjudicated in the bankruptcy.  This is wrong both factually and legally.

First, the chapter 13 plan of record addresses only plaintiff's pre-petition mortgage arrears, not post-petition arrears (see Plan attached as Defendants' Motion Ex. "E").  The disputes as to post-petition mortgage arrears at issue herein were not adjudicated by the Bankruptcy Court. The March, 2011 certification of default was correct as to the payments missed, February and March, 2011, but incorrect as to the missed payments breaching the 2nd Motion for Relief, the latter having addressed a delinquency in payments for the much earlier period of January through June, 2009.  Regardless, Plaintiff paid these post-petition payments to GMAC which they accepted and it was not until May, 2011, that GMAC again declined payments as alleged, but failed to file any pleading in the bankruptcy regarding a post-April, 2011 post-petition mortgage delinquency[12].  It was not until September, 2011, or two (2) months after bankruptcy discharge, that defendants gave any written notice of a new alleged post-petition delinquency.

Second, plaintiff contested the earlier February, 2010 certification of default by defendants when her plan was not complete. Had she not done so, her bankruptcy would have

_____

[12]FAC ¶ 33.

failed and payment of her mortgage arrears could have been accelerated in a state court foreclosure.  In contract, defendants' March, 2011 certification of default occurred after her plan was complete in January, 2011 and did not affect her discharge.  Also, as stated it was filed as to a delinquency already satisfied.  Accordingly, there was nothing for plaintiff to contest prior to discharge.

Accordingly, the facts of the instant case are hardly comparable to the case of <u>Eastern Minerals</u> cited by defendant in which a creditor filed an objection to discharge complaint, accepted the Court determined pro rata distribution from debtor's estate to pay its proof of claim, and then sued debtor in state court for the percentage amount of the claim above the pro rata distribution it had accepted.  There the Court found the creditor's post-bankruptcy litigation claim precluded by its intense litigation of this claim in the bankruptcy.  Here, not only was there no litigation of a post-August, 2010 post–petition mortgage delinquency by the parties, defendants conceded by their March, 2011 confirmation of default filed in plaintiff's bankruptcy that the only post-petition mortgage delinquency was for the period February-March, 2011, am amount satisfied prior to discharge[13].

## IV.    Conclusion

Plaintiff's Amended Complaint is sufficiently pleaded as to all Counts. Defendant's Motion should be dismissed in its entirety.

Dated: April 10, 2012

<u>RC 935</u>
ROBERT P. COCCO, P.C.
By:  Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200

---

[13] FAC ¶ 30.

WEISBERG LAW, P.C.
/s/Matthew B. Weisberg
7 SOUTH MORTON AVE.
MORTON, PA  19070
610-690-0801
Attorneys for Plaintiff